Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Thomas J. Hanlon
Michael D. Murphy
Assistant United States Attorneys
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO: 1:23-CR-02037-SAB-3 |
| Plaintiff, | |
| vs. | PLAINTIFF'S SENTENCING MEMORANDUM |
| JOSHAWA MAX ESTRADA, | |
| Defendant. | |

Plaintiff, United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Thomas J. Hanlon and Michael D. Murphy, Assistant United States Attorneys, submit the following sentencing memorandum:

I.

BASE OFFENSE LEVEL AND ENHANCEMENTS

The United States agrees with the calculations contained in the Presentence

Investigation Report. The Base Offense Level is 27, the Criminal History Category is IV, and the advisory guideline range is 100-125 months. Pursuant to the terms of the plea agreement, the government has agreed to recommend that the Court impose a sentence of 100 months. The Defendant has reserved the right to recommend any legal sentence.[1]

## II.

## DEPARTURES

The United States is not seeking a departure from the guideline range as determined by United States Probation.

## III.

## SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The current offense is serious. In the instant case, the victim was a young woman with significant substance abuse issues. The victim was loved by her family and her death has caused them to endure a great deal of pain. The victim's drug addiction led to her being used by several people. The victim's drug abuse

---

[1] ECF No. 249.

Government's Sentencing Memorandum    2

also led to mental instability and acts of violence. On or about October 5, 2018, in two separate events, the victim shot and killed Rosenda Strong ("Strong"), and shot and wounded Wilson Hunt ("Hunt.")

After the shooting of Hunt, the victim and Andrew Zack traveled to 4670 Branch Road, Wapato, Washington. The victim and Zack had an argument. Zack went into a garage structure to urinate. The victim took out a gun and fired multiple shots into the garage. One of the rounds struck Zack in the hand. Luckly, Zack suffered only a minor injury. Zack hid in the garage with his cellular phone.

Uriel Badillo ("Badillo") received a phone call that Zack needed assistance. Badillo traveled to the residence and observed the victim. The victim was likely under the influence of controlled substances. It is unknown what the victim did with the firearm. Badillo asked the victim if she saw Zack. The victim did not respond. At this time, Badillo did not know what was going on and decided to take the victim with him to look for Zack. Badillo knew that Zack often visited a residence known as the "House of Souls." This residence was a place where drug addicts and drugs dealers would often visit and spend the night.

Badillo and the victim arrived at the "House of Souls." Badillo looked for Zack but was unable to find him. Presumably, Zack had called someone at this location and told them what had happened. A female exited the residence and told Badillo to "gag the bitch up." The victim was restrained in the back of Badillo's

vehicle and a sock was taped in her mouth. Badillo was then told to return to 4670 Branch Road. Badillo, the victim, and the unknown female traveled back to 4670 Branch Road.

Upon arriving back at the residence on Branch Road, Badillo observed several people standing on the property. At some point, a decision was made to put the victim into the trunk of a vehicle. No one present advised that the victim fought back. Rather, the people that were present indicated the victim complied with orders. The victim was restrained with a cargo strap, duct tape, and she was gagged. The victim was put back into the trunk of the vehicle. The trunk was closed and Badillo fired several rounds into the trunk. The victim was struck by multiple rounds.

A male juvenile was tasked with dumping the victim's body. A female juvenile traveled with the male. The juveniles transported the victim's body to an area within the boundaries of the Yakama Nation. The male juvenile removed the victim from the trunk and dumped her body. The male juvenile then shot the victim's body because he wanted to know what it was like to shoot a human being. The juveniles then traveled back to the Defendant's residence.

The Defendant returned home the following day.[2] The juvenile male (and others) told the Defendant what had happened regarding the victim. Due to his

---

[2] The Defendant resided at 4670 Branch Road.

Government's Sentencing Memorandum    4

knowledge of the area, the Defendant knew that the location where the victim's body had been dumped would be discovered quickly. The Defendant teased the juvenile for picking such a poor place to hide the body. According to the Defendant, Badillo told him to move the victim's body and retrieve evidence from the body.

The Defendant and the juvenile male traveled to the location where the victim's body had been dumped. They retrieved the victim's body and transported her to a new location. They dumped the victim's body in a much more isolated location. The Defendant removed the cargo strap from the victim's body. The juvenile male then shot several more rounds into the victim's body.

The Defendant and the juvenile male returned to the Branch Road residence. The Defendant gave the cargo strap to Badillo. Later, the entire crime scene was cleaned up.

On November 28, 2018, the victim's remains were discovered. Between October 6, 2018 and November 28, 2018, the victim's family had no idea what had happened to the victim. The victim's family hoped that the victim was going to return home. The victim's family had to suffer the anguish of not knowing where their loved one was located. After the discovery of the victim's body, her family still had no closure as they had no idea who would have committed such a horrific act of violence.

The Federal Bureau of Investigation ("FBI") and the Yakama Nation Police Department ("YNPD") devoted several years to the instant investigation and the related investigation concerning Rosenda Strong. Agents conducted numerous interviews in multiple states. Agents and police talked to anyone and everyone who claimed to have information. Agents and police followed up on every lead and every rumor, searched every location, and literally dug up the ground in various locations looking for Strong. In March 2019, the FBI executed a federal search warrant at the 4670 Branch Road residence. The FBI observed that the crime scene had been cleaned and items removed from the garage. However, the FBI observed several bullet holes in the wall of the garage.

The FBI and Yakama Nation police wanted to find the vehicle that the victim had been murdered in. The FBI and the Yakama Nation conducted a thorough search of the Yakama Nation for the vehicle but were unsuccessful. On January 5, 2019, a vehicle was found submerged in a pond. The trunk of the vehicle had several bullet holes. It was later determined that this was the vehicle in which the victim had been murdered. Law enforcement did not know who concealed the vehicle until June 2023.

On June 13, 2023, the instant Indictment was filed. On June 16, 2023, Michael Moody ("Moody") was arrested. Moody advised law enforcement of his involvement in the Strong case. Moody advised that he felt "better getting this off

his chest." Moody admitted to his role in the Strong case. Moody then disclosed that he assisted in getting rid of the vehicle in question. Moody advised that he and the Defendant took the car to "Charlie's pond." Moody advised that he watched the Defendant drive the car into the pond and then jump out of the car. Moody advised that no one made threats or forced him conceal the car.

The Defendant has a lengthy criminal history. The Defendant's criminal history includes, but is not limited to, negligent driving (pled down from DUI), Illegal Firearm Possession, Possession of Methamphetamine and Heroin[3], Attempting to Elude a Police Vehicle, Possession of a Stolen Motor vehicle, Residential Burglary, and Theft. The Defendant also has a number of open cases in the Yakama Nation tribal court system.

The Defendant is likely to argue that he was scared and only assisted in covering up the murder due to fear. The government highly doubts such a story. The Defendant has a history of associating with Badillo and Zack. As noted above, the Defendant was with Badillo when they were both arrested in November 2018 with drugs and weapons. The Defendant had no fear of Zack and described him to the FBI as "a pussy." Furthermore, the Defendant was friends with the juvenile male whom he assisted in dumping the victim's body. The Defendant

---

[3] In this 2018 case, the Defendant was driving a car while Badillo had sex with a female in the backseat. A police officer stopped the vehicle. The Defendant provided a false name to the officer. The police found drugs and firearms inside of the vehicle.

Government's Sentencing Memorandum    7

repeatedly lied to the FBI and attempted to place the blame on Zack for dumping the victim's body. The Defendant advised that he lied because he didn't want the juvenile male to get into trouble. After failing a polygraph, the Defendant admitted that he had lied about Zack's involvement.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The Defendant has demonstrated that he has no respect for humanity, the community, or the law. The United States submits that a sentence of 100 months imprisonment is required and is necessary to promote respect for the law, and to provide just punishment.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Prior terms of incarceration failed to deter the Defendant from engaging in criminal acts. The United States submits that a term of imprisonment is required.

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

The Defendant is a danger to the community. The Defendant assisted in covering up a murder. The Defendant participated in transporting and dumping the body of young women. The Defendant never contacted the police to report the crime. The Defendant never contacted the family to give them closure. Here, the only viable sentence is a term of imprisonment.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

The Defendant appears to be in need of educational or vocational training.

IV.

GOVERNMENT'S SENTENCING RECOMMENDATION

Here, the government recommends that the Court impose a term of imprisonment of 100 months to be followed by a three year term of supervised release.

Respectfully submitted this 5th day of March 2025.

    Richard R. Barker
    Acting United States Attorney

    <u>s\ Thomas J. Hanlon</u>
    THOMAS J. HANLON
    Assistant United States Attorney

    <u>s\ Michael D. Murphy</u>
    MICHAEL D. MURPHY
    Assistant United States Attorney

I hereby certify that on March 5, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF which will send notification of such filing to the following: Gregory L. Scott.

                                s\ Thomas J. Hanlon
                                THOMAS J. HANLON
                                Assistant United States Attorney
                                United States Attorney's Office
                                402 E. Yakima Ave., Suite 210
                                Yakima, WA   98901
                                (509) 454-4425
                                Fax (509) 454-4435